1              UNITED STATES DISTRICT COURT
                   DISTRICT OF MINNESOTA
2

3    ------------------------------------------------------------
                                    )
     United States of America,      )   File No. 14CR261
4                                    )   (3, 4, 6, 8, 10, 13,
            Plaintiff,               )   14, 15, 17, 18, 21)
5                                    )        (JRT/BRT)
     vs.                             )
6                                    )
     Naser Mustafa, Edwan T.         )   Minneapolis, Minnesota
7    Mustafa, Bilal Muhammed         )   January 5, 2018
     Mustafa, Moises                 )   10:10 A.M.
8    Navarro-Cazales, Cederic        )
     Chappell, Victor Tombekai Doe,  )
9    Yolanda Coombs, Caswana Miles,  )
     Marquis Terell Maggiesfield,    )
10   Marcus Phillip Coleman and      )
     Abbas Ateia Al Hussainawee,     )
11                                   )
                                     )
12          Defendants.              )
                                     )
13   ------------------------------------------------------------
     United States of America,       )    File No.  15CR032
14                                    )        (JRT)
            Plaintiff,                )
15                                    )
     vs.                             )
16                                    )
     James Allen Mrsich,             )
17                                    )
            Defendant.                )
18
     ------------------------------------------------------------
19
          BEFORE THE HONORABLE CHIEF JUDGE JOHN R. TUNHEIM
20              UNITED STATES DISTRICT COURT
                    **(RESTITUTION HEARING)**
21

22

23

24

25

```
1     For the Plaintiff:        United States Attorney's Office
                                KAREN B. SCHOMMER, AUSA
2                               300 South Fourth Street
                                Suite 600
3                               Minneapolis, MN 55415

4     For Deft Naser Mustafa:   Kelley, Wolter & Scott, P.A.
                                DANIEL M. SCOTT, ESQ.
5                               431 South Seventh Street
                                Suite 2530
6                               Minneapolis, MN 55415

7     For Deft Edwan Mustafa:   MacGillis Law
                                SARAH M. MacGILLIS, ESQ.
8                               333 South Seventh Street
                                Suite 2350
9                               Minneapolis, MN 55402

10    For Deft Bilal Mustafa:   Mauzy Law PA
                                CASEY T. RUNDQUIST, ESQ.
11                              800 Hennepin Avenue
                                Suite 800
12                              Minneapolis, MN 55403

13    For Deft Chappell:        Ostgard Law Office
                                JAMES E. OSTGARD, II, ESQ.
14                              P.O. Box 582536
                                Minneapolis, MN 55458
15
      For Deft Doe:             Tilton & Dunn, PLLP
16                              GEORGE R. DUNN, ESQ.
                                101 East Fifth Street East
17                              Suite 2220
                                St. Paul, MN 55101
18
      For Deft Coombs:          Brandl Law, LLC
19                              JEAN M. BRANDL, ESQ.
                                310 Fourth Avenue South
20                              Suite 5010
                                Minneapolis, MN 55415
21
      For Deft Miles:           Beito & Lengeling
22                              ROBERT A. LENGELING, ESQ.
                                310 Fourth Avenue South
23                              Suite 1050
                                Minneapolis, MN 55415
24

25
```

```
 1        For Deft Maggiesfield:      Smith & Glaser
                                      KURT B. GLASER, ESQ.
 2                                    333 Washington Avenue North
                                      Suite 405
 3                                    Minneapolis, MN 55401

 4        For Deft Al                 DANIEL L. GERDTS, ESQ.
          Hussainawee:                247 Third Avenue South
 5                                    Minneapolis, MN 55415

 6                                    WILLIAM STARR, ESQ.
          For Deft Mrsich:           746 Mill Street
 7                                    Wayzata, MN 55391

 8

 9        Court Reporter:            KRISTINE MOUSSEAU, CRR-RPR
                                      1005 U.S. Courthouse
10                                    300 South Fourth Street
                                      Minneapolis, MN 55415
11

12

13
              Proceedings recorded by mechanical stenography;
14        transcript produced by computer.

15

16

17

18

19

20

21

22

23

24

25
```

1                                                          **10:10 A.M.**

2

3                               **(In open court.)**

4              THE COURT:  You may be seated.  Good morning,

5     everyone.  This is Criminal Case Number 14-261, United

6     States of America versus Naser Mustafa, et al, and also

7     15-32, which is United States of America versus James Allen

8     Mrsich.

9              Let's have counsel note appearances.  First for

10    the government?

11             MS. SCHOMMER:  Good morning, Your Honor.  Karen

12    Schommer, Assistant United States Attorney, on behalf of

13    the government.

14             THE COURT:  Good morning.

15             For the defendants?

16             MS. BRANDL:  Good morning, Your Honor.  Jean

17    Brandl representing Yolanda Coombs, who is not in court,

18    but she has asked me to represent her without her presence.

19             THE COURT:  Very well.

20             MR. GERDTS:  Daniel Gerdts, Your Honor, for

21    Mr. Al Hussainawee, who is seated beside me.

22             MR. GLASER:  Good morning, Your Honor.  Kurt

23    Glaser for Marquis Maggiesfield, who is in Pekin, Illinois.

24             MR. OSTGARD:  James Ostgard appearing for

25    Mr. Chappell, who is appearing by phone.

 1                    MR. SCOTT:  Dan Scott representing Naser Mustafa,

 2     and he has waived his appearance.

 3                    THE COURT:  Okay.

 4                    MR. SCOTT:  His waiver is on file.

 5                    THE COURT:  All right.

 6                    MS. MacGILLIS:  Sarah MacGillis on behalf of

 7     Edwan Mustafa, who has also waived his appearance verbally

 8     to me after being explained of his rights.

 9                    MR. DUNN:  George Dunn on behalf of Victor Doe,

10     who has waived his appearance.

11                    MR. RUNDQUIST:  Casey Rundquist on behalf of

12     Bilal Mustafa, who has similarly waived his appearance.

13                    THE COURT:  Very well.

14                    MR. STARR:  Your Honor, William Starr on behalf

15     of James Mrsich, who is in court.

16                    THE COURT:  All right.

17                    MR. LENGELING:  And, Your Honor, Robert Lengeling

18     on behalf of Caswana Miles, who is in the indictment.  She

19     has waived an appearance also.

20                    THE COURT:  All right.  Very well.

21                    Okay.  Let's see.  Ms. Schommer, are you going

22     first this morning?

23                    MS. SCHOMMER:  Yes, Your Honor.  And I don't know

24     if Your Honor has a preconceived notion of how to handle

25     this.  There are a couple of things that I think we can

1    take care of first before getting into each of the

2    individual defendants who have filed objections.

3              First, with Your Honor's permission, I would like

4    to just place on the record just procedurally some

5    information because I think it goes to some of the

6    defendants' claims that this is an untimely motion, and so

7    I would just remind the Court that each of these defendants

8    had pled guilty.

9              And back in July of 2015 just about all of those

10   guilty pleas had been entered save for one, and at that

11   time in July 2015, the probation officer, Leah Heino, sent

12   the Court, and copied all of defense counsel, a letter

13   concerning the restitution in this case.

14             And in that attachment to Ms. Heino's letter,

15   there was an assessment of restitution due to each of these

16   or owed by each of these defendants.  Now, the numbers have

17   changed slightly in terms of how the government has

18   calculated those loss amounts, but in terms of the numbers,

19   certainly the defendants were on notice at that time that

20   restitution was due and owing, and that was before their

21   sentencings.

22             Again, and in each of their PSRs, restitution was

23   discussed with respect to each of the defendants, and the

24   defendants were on notice through the presentence

25   investigation that victims had in fact submitted

1    restitution requests, and that was contained in each of the

2    PSRs as well.

3            Then the United States in June of 2017 filed its

4    motion for an order of restitution, again setting forth the

5    dollar amounts for each of the defendants that the United

6    States was asking for restitution and has submitted then

7    separately by e-mail of July 26th, 2017, sent to each of

8    the defense counsel for each of the defendants a chart

9    outlining exactly the victims for whom the government

10   believes the defendants are responsible and the amounts the

11   government is claiming.

12           So that just puts us in the procedural history as

13   how we get to today.  There are, as the Court is aware, 21

14   defendants.  There are I believe 13 who have filed

15   objections to the government's request.  That leaves a fair

16   number who have not filed any objection, and for those,

17   which I will go through in just a second, the United States

18   would ask that the government's unopposed motion as to each

19   of those defendants be entered as ordered.

20           Those are, Your Honor, Blanyon Davies, Tiara

21   Ligon, James Mrsich.  The Court has entered some

22   restitution orders with respect to, for example, Jamal

23   Mustafa, Kanan Mustafa.  I believe those were contained in

24   the final J & Cs, and again, they haven't filed a response

25   or objection to the government's motion.

1          Nizer Mustafa, similarly situated.  Talal

2     Mustafa, who I believe originally filed an objection but

3     has since withdrawn that objection, and then Deantre

4     Squalls, and I believe that covers the defendants who have

5     either not filed an objection or have withdrawn their

6     objections, and the government would ask that an order of

7     restitution be entered against them as requested.

8          As a starting point, if I may approach, Your

9     Honor, the government has Government's Exhibit 1, which is

10    the restitution chart that has been sent to all of defense

11    counsel and the Court has seen with respect to hearings

12    where some of the Mustafas, as I just mentioned, but I

13    would like to make that a part of the record for purposes

14    of this hearing.

15          And we will be using this as a go-by for how the

16    government reached its restitution amounts for each.

17          THE COURT:  Very well.

18          MS. SCHOMMER:  I would note for the Court, having

19    seen this before and in my preparations leading up to

20    today, I did note one error in a dollar amount that the

21    government is requesting, and it's with respect to Marcus

22    Coleman.

23          In the, in a previous version of this restitution

24    supplement, the United States had listed the stipulated

25    loss for both Marcus and Robert Coleman as 400,000, when in

1    fact in their plea agreements and in the PSR they have

2    actually stipulated to a loss amount of 700,000.

3            It doesn't change the number with respect to

4    Robert Coleman, but for Marcus Coleman, it does change the

5    amount that the government is requesting.  Instead of from

6    being a flat 400,000, it instead is $400,628.48.  There was

7    a just slight adjustment upward for him.

8            In other respects -- and I have noted that for

9    counsel here today.  In all other respects, this spread

10   sheet is the same as what was sent to defense counsel back

11   in July and is the same as what has been presented

12   previously to the Court by the government.

13           Then we get into the individual defendants who

14   have made objections.  The government has submitted its

15   position with respect to restitution, relies on the

16   restitution chart that I have just given to the Court as

17   Government's Exhibit 1.

18           And what I would say generally with respect to

19   each defendant, the United States has assessed the loss and

20   the restitution amount for each defendant based on their

21   individual conduct such that each defendant is being held

22   for losses to victims for whom they were directly, their

23   conduct directly impacted.

24           So, for example, if we look at -- excuse me --

25   Yolanda Coombs, and I will take this as an example, same

1    with Caswana Miles, those individuals were ones who stole

2    directly cell phones directly from Walmart.  As you will

3    see on the chart on page two, those individuals are only

4    being held responsible for losses to Walmart.

5            They have not been held responsible and the

6    government is not asking for them to pay restitution to any

7    other victim, only the victim that was directly harmed by

8    their conduct, and so that's as a general sense.

9            The other thing that I would say is that as it

10   pertains, for example, to Ms. Coombs is a good example, the

11   defendants are only being held responsible for up to the

12   amounts that they agreed was reasonably foreseeable to

13   them.

14           So, for example, with Ms. Coombs, although the

15   loss to Walmart was $165,000, Ms. Coombs agreed that she

16   was responsible for loss to Walmart of up to $140,000 and

17   that that up to $140,000 was reasonably foreseeable to her.

18   So the government has only asked for restitution up to that

19   amount and not above it.

20           In many instances you will see that the

21   restitution request is capped at the amount that the

22   defendants have agreed was not just reasonably foreseeable

23   to them, but is also the value of the property that was

24   taken as a result of their conduct and therefore the harm

25   that was caused to the victims.

1    That is just in a general sense how the

2    government came up with the loss amounts as to each.  Each

3    defendant's objection is slightly different, and I can

4    certainly go through each defendant.  I don't know if Your

5    Honor wants to hear from the defendants first, and I can

6    respond.

7    What I would say is that with respect to each of

8    these defendants, the facts upon which the government is

9    relying are unobjected to facts, both in the presentence

10   report, as well as their plea agreements, and that's not

11   just the dollar amounts.

12   It's the facts that support their convictions, as

13   well as the facts underlying their conduct.  Again, if you

14   take an example for Ms. Coombs, she agreed in her

15   presentence report, both in her acceptance of

16   responsibility, as well as the facts that are outlined of

17   her conduct in the presentence report, that she stole cell

18   phones by breaking into locked cases at Walmart.

19   So that information is in the presentence report.

20   It was not objected to by Ms. Coombs.  It was also in her

21   plea agreement, and then again the dollar amount stems from

22   the amount that the defendant has agreed was reasonably

23   foreseeable to her, as well as a direct result of her

24   conduct on a loss to Walmart.

25   So for each of these defendants, the government

1    is relying on those facts that were not objected to, as

2    well as the loss amounts that were agreed to.

3              THE COURT:  The Mandatory Victim Restitution Act

4    allows for restitution to someone who is directly and

5    proximately harmed, correct?

6              MS. SCHOMMER:  Yes, Your Honor.

7              THE COURT:  Is that the same as a defendant

8    agreeing that a loss was reasonably foreseeable?

9              MS. SCHOMMER:  No.  I think that goes more to the

10   dollar amount than it does to the harm that was caused.

11   The proximate cause of the loss is one that is borne out by

12   their conduct.  The amount that results from that that is

13   reasonably foreseeable from their conduct I think goes to

14   the dollar amount.

15             THE COURT:  Okay.

16             MS. SCHOMMER:  One other note that I would make

17   for Your Honor.  To the extent that some of the defendants

18   have claimed that the government's motion was untimely, one

19   of the reasons that I started with the procedural history

20   of this, because it goes to the case law in this circuit as

21   well as the Supreme Court that clearly states that the

22   Court retains jurisdiction over the issue of restitution,

23   starting with the *Dolan* case.

24             That was a Supreme Court case, *Dolan versus*

25   *United States*, and then more recent cases in the Eighth

1   Circuit, *Adejumo* was another case, and there is also the

2   case of *Balentine*, all of which -- and *Thunderhawk* in

3   succession, *Thunderhawk* and then *Balentine,* which all speak

4   to timing, as well as notice to the defendants.

5        And what each of those cases say is that as long

6   as the Court makes clear at sentencing that the issue of

7   restitution is under consideration, and certainly that was

8   done in each of these cases in the J & Cs, that the issue

9   of restitution would be dealt with at a later point.  So

10  certainly at the sentencing phase, the defendants were made

11  aware the restitution was still on the table.

12       Certainly backing up from that, in the

13  presentence report it was noticed, as well as letters to

14  the defendants that talked about restitution amounts.

15  Where those facts are the case, as they are here, the Court

16  has made clear that even in the *Balentine* case some two

17  years had passed between the sentencing of a defendant and

18  the ordering of restitution, the Court has said that that's

19  still a timely motion.

20       And so with that, I don't know if Your Honor

21  would like me to go through each of the defendants as I

22  have them just to recite the facts or if you would like to

23  hear from defense counsel.

24       THE COURT:  Let's hear from defense counsel.  Who

25  is first?

14

1             MS. SCHOMMER:  I have them in alphabetical order,

2      but we can take them however the Court --

3             MR. SCOTT:  My ego will allow me to get up there

4      first, Your Honor.

5             THE COURT:  That's a sufficient reason.

6             MR. SCOTT:  Also I'm the first person on her list

7      that has an objection.  Your Honor, I can't disagree that

8      *Dolan* is the law, and I went back after reading *Dolan* and

9      looked at the judgment and commitment order and the plea

10     agreement.

11            The figure that they have picked for my client

12     was in the presentence investigation.  We did not object.

13     The Court did specifically in the judgment and commitment

14     order reserve the issue.  I think after that *Dolan*

15     controls, and I filed all of that in my papers.

16            The important thing I think to have is on page

17     five of the judgment and commitment is, you make decisions

18     on payment schedules, which are really important to avoid

19     the 50 percent penalty for not paying it immediately, and

20     whether or not interest should be awarded.  I would ask the

21     Court to consider waiving interest, which is pretty common

22     in these kind of cases, and also to set a nominal payment

23     schedule for Naser Mustafa.

24            He is still serving his sentence, although he

25     will be released probably later this year.

1              THE COURT:  All right.

2              MS. SCHOMMER:  If we could for the record, Your

3     Honor, as each defense counsel comes up and just say who

4     they are and who they are representing so it's clear should

5     there be an appeal.  I appreciate it.

6              THE COURT:  All right.  Mr. Ostgard?

7              MR. OSTGARD:  Your Honor, good morning.  James

8     Ostgard representing Mr. Chappell.  I hate the MVRA.  I

9     think it is, it is counter to most of what we try to

10    achieve in sentencing in terms of goals like rehabilitation

11    and that sort of thing, and my concern is with the

12    mandatory nature of the statute.

13             I represent Mr. Chappell who had, who has by the

14    government's chart one of the lowest restitution requests

15    on the part of the government.  He had a very relatively

16    innocuous role in the conspiracy.  He was involved in a few

17    transactions.

18             I think in talking with him, we believe that he

19    probably came away with about $2,000 in his own pocket from

20    his involvement in this conspiracy and was responsible

21    directly for maybe just a few thousands of dollars of loss

22    to a handful of victims.

23             So my main objection is that with the mandatory

24    act, there is a requirement of a direct and proximate cause

25    of the loss by the defendant's conduct.  The statute

1    doesn't talk about the conduct of the conspiracy as a

2    whole.  It talks about the conduct of the individual

3    defendant, and it emphasizes that over and over again, and

4    the cases have talked about that.

5            So I would distinguish the direct and proximate

6    result of the defendant's conduct from the result or the

7    proximate cause due to the conspiracy overall, the loss due

8    to the conspiracy, and when you're going to impose

9    mandatory restitution, I think you have to look at the

10   defendant's individual conduct, what he did, what he stole,

11   and what he is responsible for directly before you impose

12   that kind of a restitution requirement that is mandatory

13   and that is going to become a judgment against him and

14   enforceable against him for up to 20 years.

15           I distinguish foreseeable loss, which is the kind

16   of loss that is used in the guidelines, from the actual

17   loss which is suffered by the victims, and I cited the

18   Court to *United States versus Chaika* in my brief, an Eighth

19   Circuit case from 2012, which indicates that loss for

20   purposes of the guidelines is not a sufficient basis for

21   establishing actual loss to the victim.

22           So basically my argument is that the government

23   hasn't established what Mr. Chappell's direct actions,

24   direct responsibility is -- what that resulted in in terms

25   of loss.  It is very difficult to do that.  Because it's

1     very difficult to do that and because it would require in

2     essence a civil proceeding, subsection B, determining

3     complex issues of fact relating to the cause or amount,

4     takes this case outside of the Mandatory Victims

5     Restitution Act, and it should not apply.

6              If the Mandatory Victims Restitution Act does not

7     apply, then there is some question about whether the Court

8     has authority to actually impose any kind of restitution.

9     If it does, I would ask that the Court consider restitution

10    in terms of reasonable monthly payments being made by the

11    defendant without setting a particular total restitution

12    amount which would result in a judgment against

13    Mr. Chappell at the conclusion of his period of supervised

14    release.

15             That summarizes the argument I made in my brief,

16    Your Honor.

17             THE COURT:  All right.  Thank you, Mr. Ostgard.

18             Mr. Gerdts?

19             MR. GERDTS:  Thank you, Your Honor.  Daniel

20    Gerdts representing Mr. Al Hussainawee.  As to timeliness,

21    I agree that the case law provides the Court with

22    jurisdiction to consider the matter, but certainly the due

23    process clause at some point puts a limit on when the

24    government may make such request.

25             I haven't found any authority to tell me when

1    that limit is.  I suspect it's on a case-by-case basis, but

2    it's quite late in this case.  My primary objection in my

3    written papers has to do with the government's failure to

4    prove this loss here.

5           The government has said that the defendants have

6    stipulated to this.  It says that stipulated to the

7    reasonably foreseeable losses, but as the *Alexander* case

8    and the *Chaika* case point out, the reasonably foreseeable

9    losses for determining sentencing guidelines issues is

10   distinct from the provable loss sustained by an

11   identifiable victim for restitution purposes.

12          It's, it's not the same thing.  There was no

13   stipulation by Mr. Hussainawee as to restitution amounts.

14   There were, the presentence report listed requests that had

15   been made by various corporations, but as the *Chaika* case

16   points out, those are merely requests.  There was no

17   recommendation as to restitution in the presentence report,

18   and therefore, he doesn't even have to object to that.  He

19   is entitled to a hearing.

20          The government said, well, counsel said that she

21   is relying on the restitution chart and that we have been

22   given the restitution chart, and I have the restitution

23   chart, and what the restitution chart is, it's like a

24   Rule 1006 chart without the underlying documents.

25          It's not proof of anything.  It's simply their

1    summary of what they think the numbers ought to be, but

2    there is no proof.  There is no proof that this particular

3    person is a victim or this, we'll call it -- I don't know

4    which one pertains to Mr. Hussainawee, but let's just take

5    US Bank.

6            US Bank has apparently submitted a request for a

7    certain amount of money.  There is no evidence presented so

8    far that Mr. Hussainawee -- that that is an identifiable

9    victim directly and proximately caused by my client's

10   conduct or that the amounts that they request are

11   compensable losses directly and proximately caused by my

12   client, and until they prove it up, the Court can't order

13   it.

14           I would agree with counsel's remarks that the,

15   this might be, this almost certainly is one of those cases

16   where the complexity of proving this and the amount of time

17   it would take for the Court and counsel to get through

18   actual proof of these numbers takes it out of the Mandatory

19   Restitution Act, and I think that's all I really wanted to

20   say on it.

21           My primary objection, Your Honor, is that there

22   is no proof in this case, and without that proof by a

23   preponderance, the Court can't order the restitution.

24           THE COURT:  Okay.

25           MS. BRANDL:  Good morning, Your Honor.  Jean

1    Brandl representing Yolanda Coombs.  Your Honor, I would

2    adopt the arguments of the other counsel who have already

3    argued because they made excellent points, and I would

4    piggyback on that.

5            I join also Mr. Gerdts that my number one

6    argument is, there has been no proof.  Yes, my client

7    agreed that $140,000 was the potential loss.  You know, she

8    stole about 140 phones.  They're worth about a thousand

9    dollars each, so $140,000 at the time of plea and at the

10   time of sentencing certainly seemed reasonable as a loss if

11   those phones were truly stolen from Walmart and they didn't

12   receive them back.

13           At the time, we didn't know whether any of them

14   were damaged, whether any of them didn't get returned to

15   Walmart, et cetera.  All we knew from the police report is

16   that they were seized by police at the time because she

17   made it about 100 feet from the store or something like

18   that before the van was stopped.

19           So in our case, my client reasonably said, all

20   right, I'll allow up to $140,000 of loss.  I'll agree that

21   that's a potential loss.  She didn't agree that that was

22   the loss.  In this case, I feel like the government is

23   working backwards instead of forwards.

24           Instead of saying, where does the loss start and

25   how do we add it up?  They say, where is the upper reaches

1    of what the clients agreed to and we will kind of just stop

2    there and somehow justify it.  But I think the problem here

3    is the burden of proof is on the government to prove the

4    specificity of each loss.

5          They come back with numbers that match the

6    numbers that we thought we agreed to at the beginning, but

7    the problem is, they have a burden they have not met, and

8    as far as the $140,000, my understanding is that every

9    single phone was returned to Walmart.  We were just waiting

10   to see which were returned, which were damaged, which

11   weren't returned.

12         So I don't have any documentation to show that

13   those phones were or were not returned, et cetera.  I do

14   not think that proving this restitution is too burdensome.

15   Our clients are all being asked to pay in the millions of

16   dollars in the grand total.  It should not be too difficult

17   for the government.

18         The government shouldn't be allowed to say, well,

19   it's too hard to get these numbers so we're just going to

20   grab a number out of the sky.  Maybe Walmart sent us the

21   number 140.  I don't know.  In these documents it shows

22   140, 165.  There is no consistency.

23         So, you know, we were waiting for proof.  We

24   never got it except for the number.  Again, I don't think

25   it's difficult to prove.  Let's just take my client in

1   particular.  Let's say 140 phones were taken on the day in

2   question.  Were they returned or weren't they?

3        Simply all the government had to do was go to the

4   store in Wisconsin, ask them how many of those phones were

5   stolen and how many returned, subtract out the numbers, and

6   then they would have a number.  Again, there is literally

7   no evidence that Walmart had actually any loss on that day.

8        I feel like the government is just seeing this as

9   a blank check that, you know, and again, like, for example,

10  if someone was injured in a crime and there was a

11  possibility of $100,000 of damage or injury, medical bills,

12  but there was only $1,000 maybe of actual damage, I don't

13  believe that the Court would order $100,000.  It would

14  order $1,000 because that's the actual damage to the

15  victim.

16       I would just like to cite the government motion

17  that they say that the different roles in the conspiracy

18  are responsible for an amount based on their conduct.  So

19  that wasn't an exact quote, but basically what they're even

20  saying in their own motion is that everybody is being

21  assigned a different amount based on their role in the

22  conspiracy.

23       I want to remind the Court.  My client was

24  involved in one act ever through the entire conspiracy.

25  She was involved in a very unsuccessful theft from Walmart,

1    and that was it.  For her to have to owe $140,000 is not

2    reasonably foreseeable -- it was reasonably foreseeable if

3    the phones weren't retrieved, but that's not the truth.

4            That's the part I'm having the hardest time with.

5    Those phones were not stolen -- I mean, they were not kept

6    away from Walmart.  They were returned in their packages.

7    It wasn't like they were taken out of their packages and

8    lost their value.  They were returned basically the same

9    way they left the store.

10           I'm going to strongly urge this Court to rule

11   that Ms. Coombs does not owe any restitution in this case,

12   but in the event that this Court does make a finding that

13   the burden has been met by the government, I would ask for

14   a $25 a month payment.

15           My client earns $2200 a month.  With expenses for

16   rent, food, gas, electricity, garbage, et cetera, she is

17   left with I think $150 at the end of the month.  So it

18   would be extremely burdensome for her to even pay $25 a

19   month.  She is supporting herself and two children on her

20   own, but in any case, I am asking the Court not to order

21   restitution for Ms. Coombs.

22           THE COURT:  Mr. Glaser?

23           MR. GLASER:  Thank you, Your Honor.  Kurt Glaser

24   for Marquis Maggiesfield.  I will just join in the

25   arguments of my colleagues here and make comments specific

1   to Mr. Maggiesfield, and those are two.  First off, the

2   government has not met the showing of the direct and

3   proximate cause by the evidence they have already cited to

4   the Court.

5           If they are trying to rely on this letter dated

6   July 16th, 2015, from Ms. Heino which she contained a table

7   of what she felt was the loss that was direct and proximate

8   to my client, then the government is now asking that he pay

9   $119,401.33 for Verizon Wireless.  Ms. Heino's letter came

10  to a different calculation, and that was $41,136.34 which

11  was direct and proximate.

12          And so even at that time, it was Ms. Heino's

13  letter that put us on alert that there would be more

14  information supplied to us about how those calculations

15  were reached, and so I think that has been well covered

16  here is that we don't have the breakdown of how even those

17  numbers were reached, and without that, the government has

18  not made their showing.

19          The second point I have is that this Court did

20  already order a payment schedule for my client, $25 a month

21  for 30 months afterwards.  To remind the Court, he has been

22  diagnosed with MRSA.  It's a disease where he more or less

23  cannot work with other human beings except under very

24  unique conditions because he can transmit that disease to

25  other people.  It's a skin contagious disease that is not

1    treatable with modern bacteria or antibiotics.

2          So his ability to pay in the future is predicated

3    on his ability to work, which once he leaves the prison

4    system is probably close to zero.  So I would ask the Court

5    to maintain the payment schedule that you have already put

6    together for him in your judgment.

7          THE COURT:  Thank you.

8          MR. GLASER:  Thank you.

9          MS. MacGILLIS:  Good morning, Your Honor.  Sarah

10   MacGillis on behalf of Edwan Mustafa.  I also join some of

11   the arguments that have been advanced by my colleagues,

12   specifically that one that relates to the government's

13   failure to provide a direct causal link between the

14   $1,015,901 it would attribute to Edwan Mustafa as part of

15   the loss amount in this case.

16         We agree that we were in receipt of the

17   government's table in 2015.  We agree that there is no

18   material change as it relates to Mr. Mustafa, but we do not

19   agree that the government has at any point in time shown us

20   loss that was directly related to Edwan Mustafa's conduct,

21   and this is directly related to the second part of my

22   argument, which addresses this Court's discretion in

23   ordering restitution, either individually as to a defendant

24   or jointly and severally as to several codefendants who are

25   all responsible for the same loss.

1          18 U.S.C. 3664(h) allows this Court to consider

2     the level of culpability and the economic circumstances of

3     an individual defendant when they could potentially be

4     jointly and severally or singly responsible for

5     restitution.

6          First, as set forth in the government's own

7     sentencing pleadings in this matter, Edwan Mustafa

8     exercised little to no autonomy in this scheme.  He derived

9     little personal benefit, received irregular cash payments

10    from his brothers and lived a humble life-style.

11         That's a direct quote out of the government's

12    position pleadings.  The government also acknowledges the

13    complete and utter disconnect between loss and

14    Mr. Mustafa's gain, and that directly relates to this

15    Court's discretion to consider relative levels of

16    culpability in apportioning restitution.

17         Second, and again as set forth in greater detail

18    in our pleadings and specifically in our sentencing

19    pleadings, this was a long time ago, so I don't expect that

20    the Court might remember this.  But Mr. Edwan Mustafa is

21    possessive of an extraordinary low intellectual ability, so

22    much so that within a few weeks of me representing him, I

23    asked the Court for funds to have him evaluated because it

24    was so clear to me that he could not understand me well and

25    that we were having some serious communication problems.

1          The Court allowed that examination to take place,

2    and the information that we got was that Edwan Mustafa

3    possesses an intellect in the bottom 3 percent of the

4    population.  He possesses an intellect of a third grader.

5    That relates not only to his participation in this

6    conspiracy, but also as it relates to his ability to have

7    any kind of economic wherewithal to pay any amount of

8    restitution.

9          If this Court does order restitution, we have

10   asked that it only be ordered, that Edwan only be ordered

11   to make a nominal payment.  I would suggest in this case

12   given his economic history, a payment of no more than $20 a

13   month would be reasonable.  We would also ask, as Mr. Scott

14   noted, that you waive any interest on any restitution

15   order.

16          Thank you.

17          THE COURT:  Thank you, Ms. MacGillis.

18          Mr. Dunn.

19          MR. DUNN:  George Dunn appearing on behalf of

20   Victor Doe.  Judge, I'm going to adopt the arguments of my

21   counsel.  I will try to just mention a few other things

22   that I think are applicable here.

23          Regarding the failure of the government to prove

24   the damages, there is nothing before the Court now to

25   determine whether or not these numbers they are coming up

1    with was the retail price, the price that they were hoping

2    to get if they were able to successfully sell them to

3    customers over the counter at the retail price, or whether

4    this was actually their cost, which I think for restitution

5    the costs should be figured into it as the number, rather

6    than the retail price, which when you come to the

7    sentencing, the retail price is what controls.

8          The next thing is, we don't know anything about

9    insurance, whether any insurance were made claims on this,

10   whether that would have offset their actual losses and

11   therefore who is the actual entity that lost money on this.

12   So I just add those two other items along the item of

13   specific -- their failure to prove specific amounts and

14   identifiable victims.

15         In regards to Mr. Doe and the waiver of interest

16   and nominal payments, Mr. Doe is currently in the custody

17   of ICE in Iowa.  He is subject to deportation.  He and his

18   family are originally from Liberia.  They were family

19   members of Samuel Doe, who was the president of Liberia for

20   many years, deposed over the course of two very bloody

21   civil wars.

22         His family fled Liberia to the Ivory Coast for a

23   number of years, returned during a period of relative peace

24   and then fled to the United States.  Persecution continues

25   with the Doe family in Liberia, but whether or not he will

1     be deported we don't know.

2           He was set up to be a U. S. citizen, but just

3     months after his family's applications were approved, he

4     had turned 18 a few months before and therefore was no

5     longer on the application.  He had to start his own

6     applications.  Being an 18-year-old high school student, he

7     didn't complete the paperwork, and he has a permanent

8     residency but not citizenship.

9           He has no assets.  He has only liabilities.  He

10    has no income.  He has four children with child support

11    obligations.  He has a high school degree from an

12    alternative learning situation, but no profession.  He

13    really has no way to pay this restitution, and so I would

14    request a waiver of the interest and nominal payment of $20

15    a month if you decide that this applies to Mr. Doe.

16          Thank you.

17          THE COURT:  Thank you, Mr. Dunn.

18          MR. RUNDQUIST:  Your Honor, Casey Rundquist on

19    behalf of Defendant Bilal Mustafa.  We join in the

20    arguments previously made by co-counsel and largely rest on

21    our written submission for the question of whether or not

22    restitution should be ordered as the government requests

23    it.

24          With respect to the alternative remedy of waiving

25    interest and making a nominal payment schedule, I do note

1    that the Court's initial sentencing judgment has already

2    waived the interest requirement on a future restitution

3    judgment.  We ask that that order continue.

4         With respect to payments, Mr. Mustafa is of

5    course in custody at the federal prison camp Duluth.  I

6    anticipate his release date to be in April of 2020.  We

7    would ask that upon that release he be ordered to make $25

8    a month payments.  He is similarly situated to the other

9    defendants in that he lacks significant professional skills

10   or a likelihood to initially be able to afford any more

11   contributions towards restitution than that.

12        Nothing further.

13        THE COURT:  All right.  Thank you, Mr. Rundquist.

14        Come on up, Mr. Lengeling.

15        MR. LENGELING:  Good morning, Your Honor.  Robert

16   Lengeling, L-e-n-g-e-l-i-n-g, appearing on behalf of

17   Ms. Miles.  I would join my colleagues also.  I won't have

18   to go into all of that again.  The arguments were

19   excellent.  What Ms. Miles has asked me to present to the

20   Court today is, Your Honor, she describes herself as

21   somewhat of a small-time thief.

22        So while she had some doubts what the claimed

23   amounts were here from Walmart, Your Honor, in the process

24   of negotiating her plea agreement, she did stipulate to

25   some information with the idea that there could some day be

1    a restitution order.  I think from her perspective, the way

2    she has described it to me, when she hadn't heard about any

3    restitution for such a long time, she was hopeful that

4    restitution maybe wasn't going to happen for her.

5            Your Honor, she has a very difficult time coming

6    up with any income right now.  She is facing a potential

7    prison sentence in Hennepin County.  As the Court may know,

8    she has a revocation matter that is pending.

9            She is set for trial on July 22nd of this month

10   on a new case in Hennepin County, and frankly, if she loses

11   that, that is a 24-month commitment.  That case is based on

12   the fact that she has had a very difficult time finding

13   housing, maintaining employment and income.

14           So now she is charged with falsifying an

15   application for an apartment.  She has had a very difficult

16   time.  Her main concern here, Your Honor, if the Court is

17   to order restitution that she, obviously, she would have to

18   have minimal payments on a monthly basis, but also waiving

19   interest and penalties as well.

20           It is her position that she doesn't believe she

21   will ever be able to ever have this paid off.  She does

22   have doubts about the $140,000 number, but certainly if the

23   Court is going to order it, she is going to need some

24   assistance in being able to come up with this kind of

25   money.

1          That is really what she is mostly concerned about

2     me presenting to the Court today.  She is asking the Court

3     to not order her to pay any restitution, obviously, but

4     short of that happening, she is definitely someone that

5     would have to have the minimal payments, Your Honor.

6          Thank you.

7          THE COURT:  Thank you, Mr. Lengeling.

8          Mr. Starr?

9          MR. STARR:  Good morning, Your Honor.  William

10    Starr representing James Mrsich.  Your Honor, we did not

11    file an objection simply because we were the smallest

12    amount on the calendar, on the chart, so I didn't want to

13    rock the boat.

14          I've got my own number, Your Honor, 15CR32 JRT,

15    but I did want to just point out to the Court that the cue

16    pay, which was the liability of my client in the amount of

17    $40,824.96, apparently there were nine other defendants

18    that were far more culpable than my client was who were

19    jointly and severally liable I assume on that 40,000.

20          Your Honor, my client filed bankruptcy on April

21    22nd, 2014.  He has a gambling license, and he was a dealer

22    in the poker rooms in Canterbury and Running Aces, and he

23    lost that license.  He did ten months at the camp.  He

24    presently is an apprentice in barber school.  He has two

25    children at home.

1          He has a $15,000 obligation on his child support,

2     and he has no funds.  So I would urge the Court to waive

3     the penalty and the interest and adjudicate the minimum

4     payments.

5          Thank you, Your Honor.

6          THE COURT:  Thank you, Mr. Starr.  We got

7     everybody.

8          Ms. Schommer, anything else?

9          MS. SCHOMMER:  Your Honor, I just want to make

10    clear from some of the statements that defense counsel have

11    made is that the government is only asking for actual

12    losses that have been submitted by each of these victims,

13    and those losses were submitted and set forth in the

14    presentence report.

15         Those are not estimated losses.  They are not

16    just losses that happen to amount to a number that the

17    defendants have agreed to.  As, for example, Mr. Starr just

18    mentioned, while his client alone had agreed to up to a

19    million dollars, the United States is only asking for him

20    to be responsible for $40,824.96 because that's the actual

21    loss borne by the victim that was directly harmed by

22    Mr. Mrsich.

23         The losses that are submitted are actual losses,

24    and I would suggest to the Court that they are conservative

25    as well.  The victims, for example, the Walmarts, the AT&T,

1    Sprint, those companies did not use retail value, as many

2    have suggested.  These phones could retail for well in

3    excess of a thousand dollars, but the companies were using

4    their losses, the cost to them for these phones.

5                 THE COURT:  Did each of them use that cost

6    number?

7                 MS. SCHOMMER:  Yes.  That's my understanding,

8    Your Honor.  With respect to Mr. Maggiesfield, Mr. Glaser

9    made a suggestion that there had been a lower amount

10   previously mentioned in Ms. Heino's letter and attachment,

11   and I have that here and would just point out to the Court

12   that the supplement that was attached to Ms. Heino's letter

13   of July 16th, 2015, actually had a much greater amount for

14   Mr. Maggiesfield.

15                Mr. Maggiesfield, just to remind the Court, had

16   agreed to a loss foreseeable to him of up to $350,000, and

17   in fact Ms. Heino had assessed an amount of $350,000 to

18   Mr. Maggiesfield.  Whereas, the government here today is

19   only asking for restitution to Verizon, and that amount is

20   $119,000, so far less than what was actually originally

21   estimated to be a loss caused by Mr. Maggiesfield.

22                The United States has no further argument on the

23   point and would rest on its previous argument.

24                THE COURT:  All right.  Anything else from

25   anybody?

1          All right.  The Court will take the motion and

2     the objections here made under advisement and will issue a

3     written order as quickly as possible.

4          Thank you for coming in morning.  The Court is in

5     recess.

6          THE CLERK:  All rise.

7          **(Court was adjourned.)**

8               *         *          *

9          I, Kristine Mousseau, certify that the foregoing

10    is a correct transcript from the record of proceedings in

11    the above-entitled matter.

12

13

14

15    Certified by:  s/  Kristine Mousseau, CRR-RPR
                            Kristine Mousseau, CRR-RPR
16

17

18

19

20

21

22

23

24

25